EL DORADO *v.* COATS.

Opinion delivered October 31, 1927.

1. MUNICIPAL CORPORATIONS—CONSTRUCTION OF GRANT.—Every grant from a city acting in its sovereign capacity is to be construed strictly against the grantee and in favor of the city.

2. MUNICIPAL CORPORATIONS—GRANT OF EXCLUSIVE FRANCHISE.—It will not be presumed that a city has granted an exclusive franchise to furnish gas to the city unless the deliberate purpose of the city to so surrender such power clearly appears.

3. MUNICIPAL CORPORATIONS—CONTRACTS.—A city council, in the exercise of its sovereignty, may contract like an individual and be bound accordingly.

4. MUNICIPAL CORPORATIONS—FRANCHISE AS CONTRACT.—Where rights are granted by an ordinance and a franchise given, a contract

is created between the city and the party or corporation to whom it is granted.

5. CONSTITUTIONAL LAW—IMPAIRMENT OF OBLIGATION OF CONTRACT.— Although an ordinance granting a franchise to a gas company became a contract founded on mutual considerations, yet, where it granted no exclusive rights, a second ordinance granting a similar franchise to a rival company is valid, as not impairing the obligation of a contract.

6. INJUNCTION—GRANT OF SECOND FRANCHISE.—Where no exclusive right is conferred by an ordinance granting a franchise to a person to furnish gas to a city, another person or corporation claiming the right to operate under a second similar franchise granted by the city will not be restrained.

7. GAS—EXCLUSIVENESS OF FRANCHISE.—Where a franchise granted by a city ordinance to a gas company was not expressly made exclusive, no exclusive rights were gained thereunder.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed.

STATEMENT BY THE COURT.

W. M. Coats, receiver, El Dorado Gas Company and Central States Gas and Electric Company, the appellees herein, brought suit in the Second Division of the Union Chancery Court against the city of El Dorado and Public Utilities Corporation of Arkansas, the appellants. In the complaint it was alleged that the El Dorado Gas Company is a corporation, organized and doing business under the laws of the State of Arkansas, and that the Central States Gas & Electric Company is a corporation organized and existing under the laws of the State of Delaware; that the El Dorado Gas Company is a subsidiary of the Central States Gas & Electric Company, a majority of its stock being owned by that company; that W. M. Coats had been duly appointed by the chancery court of Union County as the receiver of said companies, and had taken charge of all of their properties, and was operating same under orders of the court; that the court had authorized the receiver to institute this action; that the Public Utilities Corporation of Arkansas is a corporation organized under the laws of the State of Delaware, and with its principal place of business in the city of El Dorado,

and that it had complied with the laws of this State with reference to foreign corporations doing business here; that the city of El Dorado, on the 21st day of March, 1921, passed ordinance No. 237, and granted to J. W. Atkins, his successors and assigns, the right to erect, maintain and operate a system of pipes for the conveyance of natural gas, for heating, lighting and furnishing power for manufacture and other purposes, for public and private use, in the said city of El Dorado, and granted to him and his successors and assigns the right to use the streets, alleys and public grounds of said city for these purposes; that Atkins, his successors and assigns, accepted the rights granted under the franchise, and complied with the terms and conditions of the same; that the Central States Gas & Electric Company are the owners and entitled to the rights and privileges granted under the ordinance to Atkins, his successors and assigns, by proper deed of conveyance and assignment; that Atkins, his successors and assigns, were granted, for a period of twenty-five years after the passage of the ordinance, the right to enter upon and excavate, dig and do such things as might be necessary to lay its gas mains and gas pipes, with the necessary attachments, for the purpose of supplying gas to its consumers in said city. The rates to be charged consumers were set out in said ordinance, and it was further provided that the city was to receive 2 per cent. of the gross receipts from the sale of gas in said city, same to be paid each month. The city of El Dorado was to receive free gas for the purpose of heating the city hall and city prison, and was also obligated to keep in reserve at least one well, of sufficient capacity to supply the city with gas, in case any of the other wells failed, and to give to the city of El Dorado preference of supplying gas as against all its other consumers.''

It was further alleged that the appellees had erected, and maintained at a large expense, a system of pipes for the purpose of supplying gas under the terms of said ordinance and franchise. That it had furnished the city

its gas free, as provided in said ordinance, and had paid 2 per cent. of its gross receipts.

It was further alleged that, on the 6th day of January, 1927, the city of El Dorado, through its mayor and council, for the purpose of supplementing and obtaining a competitive system of pipes for furnishing gas to domestic and industrial consumers in the city, passed an ordinance granting to the Public Utilities Corporation of Arkansas and to its successors and assigns the right to erect, maintain and operate a system of pipes for the conveyance of natural gas, for heating, lighting and furnishing power for manufacturing and other purposes for public and private use, in the city, and granting to it the right to use the streets, alleys and public grounds in said city for a period of twenty-five years, and that said ordinance was duly passed and later accepted by the said Utilities Corporation of Arkansas. The rates to be charged under the ordinance granting the franchise to the utilities corporation were set out in the ordinance.

That by the passage of the ordinance granting to J. W. Atkins, his successors and assigns, the right to lay pipes and mains for the purpose of providing gas to its consumers, it entered into a contract with J. W. Atkins, his successors and assigns, and that the said franchise and privileges were exclusive, and conveyed to them exclusive rights and privileges, and that, by reason of the provisions in said ordinance requiring the payment of 2 per cent. of the gross receipts to be paid to the city, and having obligated Atkins and his assigns to furnish gas free to the city for its hall and prison, without reserving to the city the right to enter into a similar contract with anyone else, by clear implication contracted and agreed with Atkins and his assigns to have the exclusive privilege of using the streets and alleys of said city for the purpose named in the ordinance, and also by implication contracted and agreed with Atkins and his assigns not to enter into any other contract with any other person or corporation, by which gas might be furnished to consumers in said city, thereby depriving Atkins and his

assigns of full benefits to be derived under their ordinance and franchise.

That the granting to Atkins and his assigns, being exclusive, the city of El Dorado had no right or authority under the law to grant to the public utilities corporation the privilege of using the streets and alleys of said city for the purpose of laying pipes and mains, and to supply customers with gas, and that the rights granted under the last named ordinance are void, and that the public utilities corporation would not be entitled to exercise any rights or privileges granted to it under and by virtue of said ordinance.

It was further contended that the public utilities corporation had accepted the rights granted to it in the last named ordinance, and had already entered upon the streets, and commenced to dig and excavate, for the purpose of maintaining and operating a system of pipes for the conveyance of natural gas to be sold to consumers in said city, and that, if the public utilities corporation were permitted to erect and maintain a system of pipes in the city, and were permitted to furnish domestic and industrial consumers gas in said city, in competition with the Central States Gas & Electric Company, it would seriously impair the obligation assumed by the said company and its contract with the city, under the franchise granted, which would result in great and irreparable injury to said company.

That the franchise granted to the public utilities corporation, and the contract thus made, was all done for the purpose of destroying the Central States Gas & Electric Company's ability to perform the obligations imposed upon it by their contract with the city, and would prevent it from exercising and enjoying the rights and privileges granted to it under and by virtue of its franchise obtained from the said city.

There was a prayer for an injunction to restrain the public utilities corporation, its agents, servants and employees, from proceeding to lay its gas mains and gas pipes in the streets and alleys of said city, and from dis-

tributing natural gas and supplying and selling the same to its customers in the said city, and that the franchise granted to it be canceled and set aside, and that, upon a final hearing, it be permanently enjoined from proceeding under said franchise.

We do not deem it necessary to set out anything further in regard to the ordinances which are the basis of this litigation, because the salient features of the same have already been stated, and a fuller statement would incumber this opinion.

A notice, petition and bond for removal of the cause to the District Court of the United States in and for the Western District of Arkansas, El Dorado Division, was filed, which was by the court overruled.

The public utilities corporation filed a general demurrer to the complaint of the appellees, because the same did not state facts sufficient to constitute a cause of action.

The city of El Dorado filed a separate demurrer to the complaint, because: (1). The suit was against the city of El Dorado, to enjoin an alleged breach of a franchise granted to Atkins and his assigns, and to enjoin the said city from carrying out a franchise granted by it to the Public Utilities Corporation of Arkansas, and that, in granting either of said franchises, the said city of El Dorado was acting for and on behalf of the State of Arkansas, and that the suit, in fact, was against the State of Arkansas. (2). That the complaint did not state facts sufficient to constitute a cause of action.

The court overruled both of said demurrers, and the city of El Dorado and Public Utilities Corporation of Arkansas elected to stand on its demurrer, saved exceptions to the ruling of the court, and prayed an appeal to this court, and the chancellor granted an injunction, which became effective on May 21, 1927.

*Jeff Davis, J. G. Ragsdale, Pace & Davis, Robinson, House & Moses* and *Powell, Smead & Knox,* for appellant.

*Mahony, Yocum & Saye, Marsh, McKay & Marlin* and *G. E. Garner,* for appellee.

*Neill Bohlinger, amicus curiae.*

PONDER, Special Judge, (after stating the facts): The appellees, W. M. Coats, receiver, El Dorado Gas Company and Central States Gas & Electric Company, claim that the latter company has the exclusive right of supplying the city of El Dorado and its inhabitants gas for domestic and commercial purposes. That this exclusive right and privilege is given and granted to it by virtue of a certain ordinance passed by the city council on March 21, 1921, under which J. W. Atkins, his successor and assigns, were given this franchise, and that Atkins organized the El Dorado Gas Company, and transferred to it this franchise. That, although the word "exclusive" does not appear in the ordinance, still by reason of certain provisions in the ordinance by which the city was to receive two per cent. of the gross revenues from the business each month, and was to keep one well in reserve for the benefit of the city and its consumers, by implication it was intended and did operate to make an exclusive franchise, under the law. That the first ordinance granting a franchise to Atkins and his successors made a contract between him and the city, and that the same cannot be impaired or broken by the passage of the ordinance on the 6th day of January, 1927, and that this last ordinance and franchise are void.

By its complaint filed in equity the plaintiffs asked that the defendant corporation may be perpetually enjoined from building its gas and pipe lines in the city of El Dorado, and furnishing gas to the inhabitants of said city, and from enjoying the rights and benefits given it by reason of the franchise granted, notwithstanding such right had been granted by the council of said city, under the powers given to it by the Legislature of this State. Both plaintiff and the defendant corporations derive their franchises and authority from the council, acting in its sovereign capacity. In this country, as in England, every grant from the sovereign power is to be construed strictly

against the grantee and in favor of the city or government. The rights of the public are therefore not to be presumed to have been surrendered to a corporation, except so far as the intention to surrender them appears in the charter. *Inland Fisheries Commrs.* v. *Holyoke Water Power Co.*, 104 Mass. 450, 6 Am. Rep. 247; *Newton* v. *Mahoning County*, 100 U. S. 548, 25 L. ed. 710; *Bradley* v. *South Car. Phosphate & P. R. Min. Co.*, 1 Hughes 72, Fed. Cas. No. 1, 787.

The plaintiff claims there was a contract between it and the city of El Dorado which secured to it the exclusive right to furnish gas to said city. The court says, in *Tucker* v. *Ferguson*, 22 Wall. (89 U. S.) 527, 22 L. ed. 805: "But the contract must be shown to exist. There is no presumption in its favor. Every reasonable doubt should be resolved against it. Where it exists, it is to be rigidly scrutinized, and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require."

A State or council ought never to be presumed to surrender this power, because the whole community have an interest in preserving it undiminished; and when a corporation alleges that the State or council has surrendered its power of improvement and public accommodation, abandonment ought not to be presumed in a case in which the deliberate purpose of the State or council does not appear. *Charles River Bridge Co.* v. *Warren Bridge*, 11 Pet. 420, 9 L. ed. 773; *Northwestern Fertilizing Co.* v. *Hydepark*, 97 U. S. 666, 24 L. ed. 1036; *Union Bridge Co.* v. *Spaulding*, 63 N. H. 298.

The contention of the appellees is that the franchise granted by the ordinance in March, 1921, to Atkins and his assigns, together with what was done under the same, constituted a contract which is binding on the council and the city, and that the subsequent franchise granted to the appellant company impairs the obligation of this contract.

Unquestionably the State or the council, in the exercise of its sovereignty, may contract like an individual, and be bound accordingly.

This court is committed to the doctrine that, where rights are granted by ordinance, and a franchise given, it creates and makes a contract between the city and the party or corporation to whom it is granted. *City of Mena* v. *Tomlinson,* 118 Ark. 166, 175 S. W. 1187; *Ark. Light & Power Co.* v. *Cooley,* 138 Ark. 390, 211 S. W. 664; *Pocahontas* v. *Central Power & Light Co.,* 152 Ark. 276, 244 S. W. 712; *El Dorado* v. *Citizens' Light & Power Co.,* 158 Ark. 550, 250 S. W. 882; *Natural Gas & Fuel Co.* v. *Norphlet Gas & Water Co.,* 173 Ark. 174, 294 S. W. 52. These decisions and others of this court have created fixed property rights in this State, and it is not the purpose of this decision to modify or overrule these cases and the rules of law therein announced. But they all distinguish themselves from the case at bar, for they were not exclusive contracts, or exclusive franchises, and herein lies the line of demarcation. This distinguishes contracts of a private nature from public contracts, and the rule of interpretation is different.

In the case of *Little Rock Ry. & Elec. Co.* v. *Dowell,* 101 Ark. 223, 142 S. W. 165, Ann. Cas. 1913D 1086, Chief Justice McCULLOCH said:

"A city council acts in a legislative capacity in exercising the powers conferred upon it to grant franchises for the public benefit. The power thus conferred upon a city council by the lawmakers is coequal with the power in this respect of the Legislature itself, and in the exercise of the power of discretion, is vested with power which cannot be taken away by the courts. To proceed upon any other theory would be to substitute the judgment and discretion of the courts for the judgment of the city council, with whom the lawmakers have seen fit to lodge this power."

In the case of *El Dorado* v. *Citizens' Light & Power Co.,* 158 Ark. 550, 250 S. W. 882, Chief Justice McCULLOCH, again speaking for the court, said:

"The council of the city of El Dorado passed an ordinance, granting a franchise to Rowland and other citizens to construct and operate a system for furnishing light and water in the city, and the franchise was subsequently assigned to the Citizens' Light & Power Company. Prior to that time a franchise for similar purposes, *not exclusive,* had been granted to the Arkansas Light & Power Company, and that company is operating in the city."

The italicized words, "not exclusive," clearly shows that it was not an exclusive contract. The ordinance granting the franchise alone making the contract, the question therefore to be determined in cases of this kind, when the legislative interference is claimed, is whether such interference impairs the obligation of the contract, for there may be legislation such as to injuriously affect the interest of those with whom such contracts exist, and yet impair no obligation of contracts. Thus it has been held that, when a State confers no exclusive privileges to one company it impairs no contract by granting a franchise to a second one, with powers and privileges which necessarily produce injurious effects and consequences to the first. *Washington & B. Turnpike Co.* v. *Maryland,* 3 Wall. (70 U. S.) 210, 18 L. ed. 180.

The misfortunes which follow in such cases, as the court aptly remarks in that case, "may excite our sympathies, but are not the subject of legal redress."

Such was the doctrine laid down in *Charles River Bridge* v. *Warren,* 11 Pet. (36 U. S.) 527, 9 L. ed. 773, and which from that day to this has been sustained by the courts of last resort in this country. *Tuckahoe Canal Co.* v. *Tuckahoe & James River Canal Co.,* 11 Leigh (Va.) 42, 36 Am. Dec. 374; *Leigh Water Co.* v. *Easton,* 121 U. S. 391, 7 S. Ct. 916, 30 L. ed. 1059.

In considering the question whether the council has transcended its power by the ordinance granting the appellant company the right and privileges contained in the franchise, it becomes necessary to construe the legislative act of the council and the ordinance under which the ap-

pellees assert their claim of an exclusive right. For, notwithstanding the ordinance granting to appellees the franchise became a contract, founded upon mutual considerations, yet, if no exclusive right was conferred, then the second ordinance, which granted the franchise of the same rights to the appellant company, is valid because no obligation of contract was impaired. Nor will equity interfere by injunction to restrain the operation of a person or a corporation, claiming the right to exercise a similar franchise under the legislative authority conferred by the council. High on Injunctions, § 902.

Under the rule of law herein announced, the appellees did not have an exclusive contract or franchise.

This doctrine is vital to the public welfare.

Mr. Justice Clifford, in *Holyoke Water Co.* v. *Leyman,* 15 Wall. (82 U. S.) 512, 21 L. ed. 133, remarks:

"That repeated decisions of this court have established the rule that, whenever privileges are granted to a corporation, and the grant comes under revision in the courts, such privileges are to be strictly construed against the corporation and in favor of the public; and that nothing passes but what is granted in clear and explicit terms. Whatever is not unequivocally granted in such ordinance is taken to have been withheld."

The same rule is followed in 12 R. C. L., pp. 186 to 198.

The only other question to be determined is the construction to be given to § 7492 of C. & M. Digest. We are of the opinion that, under the language of this section, the council may have granted to the appellees an exclusive franchise or not, as in their judgment seemed best. Not having granted such a franchise, there is nothing in this section that makes it exclusive.

For the reason given this cause is reversed, and remanded with directions to dismiss the complaint of the appellees, because the same does not state a cause of action, and for want of equity, and that the restraining order granted herein shall be dissolved.

Judge McHANEY, being disqualified, did not participate in the proceeding.

Justices WOOD, SMITH and KIRBY dissent.